IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:04CV145-MU

| | |
|---|---|
| BACE INTERNATIONAL, INC., STAFFAMERICA, INC., and WILLIAM L BAUMGARDNER, JR., <br><br> Plaintiffs, <br><br> vs. <br><br> BRENTWOOD CAPITAL CORPORATION, CERTIFIED SERVICES, INC, THE CURA GROUP, INC., THE CURA GROUP II, INC., LEVY BOONSHOFT & SPINELLI, P.C., MIDWEST MERGER MANAGEMENT, LLC, DANNY L. PIXLER, W. ANTHONY HUFF, O. RAY MCCARTHA and IVAN DOBRIN, <br><br> Defendants. | ORDER |

This matter is before the court upon Defendants Midwest Merger Management, LLC ("Midwest"), W. Anthony Huff ("Huff"), and Levy Boonshoft & Spinelli, P.C.'s ("LBS") Motions to Dismiss for Lack of Personal Jurisdiction.[1] (Document #'s 9 and 10)

**BACKGROUND**

Plaintiff StaffAmerica, Inc. ("StaffAmerica") is a wholly-owned subsidiary of Plaintiff Bace International, Inc. ("BACE"). BACE is owned by a single shareholder, Plaintiff Baumgardner. Plaintiff BACE, through StaffAmerica and other subsidiaries, operated a

---

[1] Defendant O. Ray McCartha originally joined in the motions to dismiss, but subsequently withdrew his motion.

1

professional employer organization ("PEO"). Plaintiffs filed this action alleging that the Defendants, working together, perpetrated a "massive" fraud on Plaintiffs by structuring and offering bogus loans and letters of credit ("LOCs") to StaffAmerica.[2] Plaintiffs claim that Defendants scheme ultimately resulted in Defendants inducing BACE to sell its PEO operations to Defendant Cura,[3] a wholly owned subsidiary of Defendant Certified Services, Inc. ("Certified"). Defendants Midwest, Huff, and LBS (the "Moving Defendants") have moved to dismiss the Plaintiffs' claims against them, alleging that the court lacks personal jurisdiction over them. The Plaintiffs have responded with Affidavits and other supporting documents, which Defendants have disputed through their own affidavits.

## DISCUSSION

When personal jurisdiction is disputed, the burden is on the plaintiff to prove grounds for personal jurisdiction by a preponderance of the evidence. Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc., 334 F.3d 390, 396 (4th Cir. 2003). Where, as here, the court decides a motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdiction. Id. In deciding whether the plaintiff has made such a showing, the court must resolve all disputed facts and reasonable inferences in favor of the plaintiff. Id.

In order to assert personal jurisdiction over the non-resident Defendants, two conditions must be satisfied: (1) North Carolina's long-arm statute must confer personal jurisdiction, and (2)

---

[2] The LOCs were required by Plaintiffs to collateralize Plaintiffs' workers' compensation insurance coverage.

[3] "Defendant Cura" refers collectively to the Cura Defendants.

2

the exercise of personal jurisdiction over the Moving Defendants must not violate the requirements of the Due Process Clause of the Fourteenth Amendment. See Mylan Laboratories, Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993). The North Carolina Supreme Court has liberally construed the North Carolina long-arm statute to extend to the full jurisdictional powers permissible under federal Due Process. Vishay Intertechnology, Inc. v. Delta International Corp., 696 F.2d 1062, 1065 (4th Cir. 1982). Thus, the two-step inquiry merges into a single issue of whether the Moving Defendants have the requisite minimum contacts with North Carolina to satisfy due process.

The Supreme Court has fashioned two tests for determining whether a defendant's contacts with the forum state are sufficient to confer personal jurisdiction. If the cause of action is unrelated to the defendant's activities in the forum state, plaintiff must prove that the contacts are "continuous and systematic" to support the exercise of "general jurisdiction" over the defendant. Helicopteros Nationales de Colombia v. Hall, 466 U.S. 408, 415-16 (1984). If the cause of action is related to or arises out of defendant's actions within the state, the defendant's conduct may establish more limited "specific jurisdiction." In determining whether specific jurisdiction exists, the courts consider (1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities within the state; (2) whether the plaintiff's claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable. ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 711-12 (4th Cir 2002), cert. denied, 537 U.S. 1105 (2003).

Plaintiffs do not contend that the Moving Defendants' contacts with North Carolina are such that the court may exercise general jurisdiction over them. Thus, the court's analysis is

limited to whether specific jurisdiction exists. The court will review Plaintiffs' jurisdictional allegations as to each of the Moving Defendants.

With regard to Defendant Midwest, Plaintiff alleges that Midwest was the entity responsible for obtaining LOCs to secure workers' compensation insurance obligations. Baumgardner Aff. ¶ 8. Plaintiffs allege that Midwest sent correspondence to the Plaintiffs in North Carolina, solicited business from Plaintiffs in North Carolina, requested and received payments from Plaintiffs in North Carolina, and sent its agents and funds to Plaintiffs' offices in North Carolina. Baumgardner Aff. ¶¶ 5-7, 9-10; Aldridge Aff. ¶¶ 11-12.

Plaintiffs allege that Defendant Huff was one of the primary architects of the fraudulent scheme described in the Complaint, and represented that he, along with Defendant Pixler, "controlled" Defendants Brentwood, Certified, Cura, and Midwest. Verified Complaint ¶¶ 8, 75. Huff allegedly represented that he had the resources to provide the financing necessary for the LOCs required to collateralize Plaintiffs' workers' compensation insurance coverage. Verified Complaint ¶ 75. Plaintiffs allege that Huff participated in multiple meetings and conference calls (both inside and outside North Carolina) regarding the financing and procurement of the fraudulent LOCs and the overstatement of workers' compensation insurance premiums, all of which were allegedly designed to defraud Plaintiffs. Verified Complaint ¶¶ 38-39, 52-54, 73-78; Baumgardner Aff. ¶¶ 15, 17.

Plaintiffs allege that LBS was also intimately involved in the fraudulent scheme. LBS lawyers who were representing Brentwood, Certified, and Cura during the course of the fraudulent scheme were simultaneously serving as President or CEO of Brentwood and as corporate Secretary of Certified. Verified Complaint ¶ 41; Levy Aff. ¶¶ 3, 10; Spinelli Aff. ¶¶ 2-

4

4, 7. Many of the documents related to the fraudulent LOCs were executed by Charles Spinelli, one of the then principals and named partners of LBS, on behalf of Brentwood. Levy Aff. ¶¶ 3, 10; Spinelli Aff. ¶¶ 2-4, 7. Plaintiffs assert that LBS drafted the loan agreements that relate to the financing and procurement of the two fraudulent LOCs and sent them to North Carolina. Verified Complaint ¶¶ 40, 55; Baumgardner Aff. ¶¶ 19, 20, 22, 25-30, 33-37. Moreover, LBS drafted all the other transactional documents at issue, including the Management Agreement, the Stock Purchase Agreement and Addendum. Baumgardner Aff. ¶¶ 27-28, 34; Levy Aff. ¶¶ 6, 9; Spinelli Aff. ¶ 6. Plaintiffs allege that in August of 2002, LBS sent multiple email and faxes to Plaintiffs in North Carolina, including drafts of documents relating to the fraudulent LOCs at issue as well as wiring instructions for payments to be made to Brentwood. Baumgardner Aff. ¶¶ 20-21, 23-25.

The Moving Defendants have filed affidavits and other supporting documents disputing many of the allegations mentioned above. However, as stated earlier, for purposes of these motions, the court must accept Plaintiffs' version of the disputed facts. With that in mind, the court concludes that Plaintiffs have met their burden of making a prima facie showing of personal jurisdiction as to the Moving Defendants. The type and quantity of contacts by the Moving Defendants have been found sufficient to subject them to personal jurisdiction. See Craco LLC v. Fiora, No. 1:03CV676, 2004 U.S.Dist. LEXIS 5671, at *7 (M.D.N.C. Jan. 23, 2004) (personal jurisdiction found to exist over non-resident defendant due to fact he had negotiated via "telephone or some other electronic means" with North Carolina plaintiff); Carefirst, 334 F.3d at 397 ("Even a single contact may be sufficient to create jurisdiction when the cause of action arises out of that single contact . . ."); Cree v. Exel N. Am. Logistics, Inc., No.

1:02CV319, 2004 U.S. Dist. LEXIS 1726, *9-10 (M.D.N.C. February 6, 2004) (finding corporate defendant's purposeful availment most clearly evidenced by its solicitation of plaintiff's business in North Carolina). If Plaintiffs' allegations are taken as true, the Moving Defendants have purposefully availed themselves of the privilege of conducting activities within this state which directly relate to Plaintiff's claims. Moreover, the court finds that the exercise of personal jurisdiction over these Defendants is constitutionally reasonable. Accordingly,

IT IS THEREFORE ORDERED that the Motions to Dismiss for Lack of Personal Jurisdiction filed by Defendants LBS, Midwest, and Huff are hereby DENIED.

Signed: August 22, 2006

Graham C. Mullen
United States District Judge